CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Cool Power LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                  :
In re:                                                            :    Chapter 11
                                                                  :
COOL POWER LLC,                                                   :    Case No. 15-70927 (LAS)
                                                                  :
                              Debtor.                             :
                                                                  :
-----------------------------------------------------------------x

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION EMPLOYEE OBLIGATIONS, WITHHOLDING OBLIGATIONS AND EMPLOYEE BENEFITS (II) AUTHORIZING THE DEBTOR TO CONTINUE PAYMENT OF EMPLOYEE OBLIGATIONS, WITHHOLDING OBLIGATIONS AND EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS, (III) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS, AND (IV) GRANTING RELATED RELIEF

Cool Power LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"),

by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the

"Motion") pursuant to sections 105, 363 and 507 of chapter 11 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an interim order,

substantially in the form annexed hereto as Exhibit "A", (i) authorizing the Debtor to pay certain

prepetition employee obligations, prepetition withholding obligations and prepetition employee

benefits, (ii) authorizing the Debtor to continue payment of employee obligations, withholding

obligations and employee benefits in the ordinary course of business, (iii) directing banks to honor prepetition transfers related to the foregoing, and (iv) granting related relief. The Debtor also seeks entry of a final order, substantially in the form annexed hereto as Exhibit "B", granting the relief requested herein. In support of the Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1. On March 9, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2. The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Eastern District of New York in this chapter 11 case.

4. Simultaneously with the filing of its petition, the Debtor filed the Affidavit of Alfons J. Schmider pursuant to Local Bankruptcy Rule 1007-4 (the "Schmider Affidavit"). A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Schmider Affidavit, filed contemporaneous herewith and incorporated herein by reference.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. The statutory predicates for the relief sought herein are sections 105, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

7.      Prior to the Petition Date, in the ordinary course of the Debtor's business, the Debtor employed forty-nine (49) individuals (the "Employees") to provide a variety of services to residential and commercial customers on Long Island including HVAC installation and maintenance, geothermal cooling and heating, indoor air quality solutions, heating oil delivery, plumbing and appliance repair services.  The Debtor has strong relationships with a number of manufacturers and provides extensive training to its Employees to ensure that it is providing a high level of customer support.  All of the Debtor's projects are custom designed and all ductwork is fabricated on site by a team of skilled metal workers using high quality materials.

8.      Accordingly, in order to maintain its operations and maximize the value of the Debtor's estate, the Debtor must retain its Employees so that they may continue to provide HVAC and other heating and cooling related services to the Debtor's residential and commercial customers.

## RELIEF REQUESTED

9.      By this Motion, the Debtor seeks authority, in its discretion, to pay and/or honor, as the case may be, certain prepetition wage claims of Employees up to the statutory cap of $12,475 per Employee, all prepetition withholding obligations and payroll taxes related to such wages, and certain prepetition employee benefit programs.  The Debtor also seeks authority, in its discretion, to pay two (2) Employees certain prepetition commissions in excess of the statutory cap of $12,475 per Employee.   The Debtor seeks further authority to continue payment of Employee wages, withholding obligations and payroll taxes and paying and/or honoring amounts due in connection with the employee benefit programs in the ordinary course of business.  The Debtor also requests that the Court enter an order directing all banks to honor the

Debtor's prepetition checks or electronic transfers for payment of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing. Finally, the Debtor requests authority, in its discretion, to issue new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently.

10.     The Debtor's Employees are its most valuable asset. The Debtor's success is dependent on its Employees who provide a variety of heating and cooling services to the Debtor's customers and who solicit new customers to facilitate the Debtor's efforts to grow its operations. The retention of the Employees, many of whom possess specialized skills relating to custom design work and fabrication, as well as HVAC installation and maintenance, is essential to the Debtor's ability to effectively reorganize. Absent the relief requested herein, not only would the Employees suffer enormous personal hardship, but the Debtor's business would be immediately and irreparably harmed. Without its Employees, the Debtor would be unable to maintain its operations and would therefore be unable to reorganize for the benefit of its creditors.

11.     In addition, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor corporation and its employees. The uncertainty of any debtor-employer's future often damages employee morale at a critical time when the debtor requires its employees' loyalty the most. In this case, honoring the pre-petition employee obligations described herein will minimize the hardship that the Employees would otherwise endure if payroll and benefit programs were interrupted. Honoring these obligations will also prevent a rapid loss of Employees that otherwise may occur if the Employees lost their reasonable expectation of

compensation for their services. The Debtor therefore believes that the continued payment of prepetition employee obligations is both critical and justified based on the importance of the Employees to the Debtor's operations.

**I.      Payment of Employee Wages and Withholding Obligations**

*Wages*

12.      As of the Petition Date, the Debtor's aggregate workforce consisted of forty-nine (49) Employees. Four (4) of the Employees are salaried and the remaining forty-five (45) are paid hourly. In addition, seven (7) of the Employees are represented by the Metal Trades Branch Local 638 Union (the "Union") and are employed pursuant to an agreement between the Debtor and the Union (the "Union Agreement").

13.      In the ordinary course of business, the Debtor pays both hourly and salaried Employees their wages, salaries, commission and other compensation (the "Wages") by direct deposit or payroll check, at the Employee's election. The Debtor pays its Employees on a weekly basis in arrears, and its average one-week gross payroll is approximately $57,000.00.

*Commissions*

14.      In addition, as a component of their Wages, the Debtor also pays commissions to two (2) of its Employees (the "Commission Employees") who manage certain aspects of sales and servicing in an amount equal to five (5%) percent of the amount that each such Commission Employee sells. On an annual basis, the Debtor pays an aggregate amount of approximately $150,000 in commission payments to the Commission Employees. The commission payments comprise a substantial portion of the wages earned by the Commission Employees and offer a valuable incentive for the Commission Employees to generate new business for the Debtor. Absent the continuation of the commission payments, the Commission Employees would be

deprived of a substantial portion of their income and the Debtor would potentially lose the benefit of their services. The Debtor anticipates that as of the Petition Date, the Commission Employees had a contingent right to an aggregate amount of $60,000 in prepetition commissions (the "Commissions") which had not yet been paid. As set forth further herein, only a portion of Commissions constitutes priority claims pursuant to section 507 of the Bankruptcy Code. The Commission Employees are Jared Hager ("Hager") and Kenneth Schwamb ("Schwamb").

15.    Hager is the Debtor's operation manager whose responsibilities include overall operations including, but not limited to, overseeing the Debtor's installation department. Hager also works in the Debtor's commercial sales department. In that capacity, Hager prepares estimates and bids for new work for the Debtor for which he is entitled to be paid a five (5%) percent commission upon any single projects successful completion. As of the Petition Date, Hager was entitled to approximately $31,000 in commissions in excess of the statutory wage cap of $12,475 per Employee per section 507(a)(4) of the Bankruptcy Code. The $31,000 figure represents the maximum in pre-petition commissions due to Hager who ultimately may be paid a lesser amount based upon the profitability of the projects subject to his commission. Accordingly, given Hager's critical role in the Debtor's operations and estimation and the bidding of future installation work, the Debtor requests authority to pay Hager's pre-petition commissions in an aggregate amount not to exceed $31,000 as such commissions become due and owing in the ordinary course of the Debtor's business.

16.    Schwamb is the Debtor's plumbing manager whose responsibilities include management of the Debtor's plumbing operations. Schwamb also works in the Debtor's commercial sales department. In that capacity, Schwamb prepares estimates and bids for new

plumbing work for the Debtor for which he is also entitled to be paid a five (5%) percent commission upon any single projects successful completion.  As of the Petition Date, Schwamb was entitled to approximately $11,000 in commissions in excess of the statutory wage cap of $12,475 per Employee per section 507(a)(4) of the Bankruptcy Code.  The $11,000 figure represents the maximum in pre-petition commissions due to Schwamb who may ultimately be paid a lesser amount based upon the profitability of the projects subject to his commission.  Accordingly, given Schwamb's critical role in the Debtor's plumbing operations and estimation and the bidding of future plumbing work, the Debtor requests authority to pay Schwamb's pre-petition commissions in an aggregate amount not to exceed $11,000 as such commissions become due and owing in the ordinary course of the Debtor's business.

17.    The Debtor uses Paychex, Inc. ("Paychex") to provide payroll processing, accounting, tax computation, check preparation, payroll transfer and various administrative services to fund their payroll in advance.[1]  The Debtor funds its payroll to Paychex each Wednesday and Thursday from its payroll account (Account No. X1645) held at Bank of America, N.A. for the week ending on the prior Sunday.  Paychex processes the Debtor's payroll, issues checks and initiates wire transfers each Friday.  Thus, on each pay day, there are five (5) days of accrued, but unpaid wages.  The Debtor estimates that the average weekly net amount of wages is approximately $36,480.  The Debtor therefore estimates that, as of the Petition Date, its Employees will have accrued eight (8) days of unpaid Wages comprised of amounts due and owing for the payroll period from March 1, 2015 to March 7, 2015, together with one (1) additional day of wages accrued during the March 8 – March 14 pay period, in the

---

[1] The Debtor pays approximately $1437.00 to Paychex per month for its payroll services.  As of the Petition Date, the Debtor estimates that the prepetition amounts owed to Paychex on account of payroll services is approximately $936.08.  By this Motion, the Debtor seeks authority to pay all outstanding prepetition amounts due to Paychex.

aggregate net amount of approximately $42,000. As of the Petition Date, no Employee other than the Commission Employees is owed Wages in an amount exceeding the $12,475 priority cap imposed by section 507(a)(4) of the Bankruptcy Code.

<u>*Withholding Obligations and Payroll Taxes*</u>

18.    In connection with its payroll the Debtor, as an employer, is required by law to withhold federal, state and local taxes, including Social Security taxes, unemployment taxes, Medicare taxes, and garnishments (collectively, the "Withholding Obligations") from Wages for remittance to appropriate authorities. The Debtor estimates that the average weekly amount of Withholding Obligations is approximately $9,500. The Debtor's estimated total Withholding Obligations for the payroll period from March 1, 2015 to March 7, 2015, together with one (1) additional day of wages accrued during the March 8 – March 14 pay period, is approximately $10,900.

19.    In addition, the Debtor is required to match, from its own funds, the Social Security and Medicare taxes and pay, based on a percentage of gross payroll, and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (the "Payroll Taxes") and remit the same to the appropriate authorities. The Debtor pays these Payroll Taxes on a weekly basis in the approximate amount of $4,300 to various taxing authorities in accordance with the Internal Revenue Code and New York State law. The Debtor's estimated total obligation for Payroll Taxes for the payroll period from March 1, 2015 to March 7, 2015, together with one (1) additional day of wages accrued during the March 8 – March 14 pay period, is approximately $5,000.

20.    Prior to each payroll, Paychex calculates the Withholding Obligations and Payroll Taxes for the applicable pay period. The Debtor then transfers funds to its payroll

account at Bank of America so that disbursements can be made by Paychex on the Debtor's behalf. Thereafter, Paychex withholds the Withholding Obligations from Employee paychecks and remits the Withholding Obligations, together with the Payroll Taxes, to third parties. Withholding Obligations and Payroll Taxes are remitted to taxing authorities on a weekly basis. As a result, as of the Petition Date, the Debtor and/or Paychex on the Debtor's behalf is in possession of Withholding Obligations and/or Payroll Taxes relating to the prepetition period.

21.    The Debtor believes that such withheld funds, to the extent they remain in the Debtor's possession, constitute monies held in trust and therefore do not constitute property of the Debtor's bankruptcy estate. Moreover, the Withholding Obligations and Payroll Taxes likely give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code if not paid. Accordingly, the Debtor requests authority to pay any accrued and unpaid Withholding Obligations and Payroll Taxes that may relate to the prepetition period as and when they become due in the ordinary course of the Debtor's business.

22.    The Debtor also believes that all of its Employees hold priority claims with respect to their accrued but unpaid prepetition Wages pursuant to section 507(a)(4) of the Bankruptcy Code. Due to the critical importance of the Employees to the Debtor's business operations and the inability of the Debtor to replace the Employees without significant disruption to ongoing business operations, the Debtor hereby requests authority to pay the Wages due and owing to its Employees for the prepetition period as well as any Withholding Obligations and Payroll Taxes associated with the Wages, and to continue paying the Employees' Wages, Withholding Obligations and Payroll Taxes as such amounts become due in the ordinary course of the Debtor's business.

II.    **Employee Benefit Programs**

23.    In the ordinary course of business, the Debtor's Employees participate in various employee benefit plans, programs and policies, including, without limitation, medical insurance, dental insurance, life insurance, accidental death and dismemberment insurance, worker's compensation, short-term and long-term disability coverage, and 401(k) plans (collectively, the "Employee Benefit Programs").  By this Motion, the Debtor seeks the authority, but not the direction, to satisfy its obligations under the Employee Benefit Programs relating to the prepetition period, and to continue providing the Employee Benefit Programs in the ordinary course of business.  The Debtor estimates that, on a weekly basis, it deducts approximately $1,650.00 from Employee paychecks towards the Employee Benefit Programs, as described herein.

   *Health Benefits*

24.    The Debtor has established medical and dental plans (the "Health Plans") designed to provide the greatest coverage to its Employees while at the same time minimizing the high cost of providing healthcare.  Full-time Employees and their dependents may be eligible for medical and dental coverage under the Health Plans after ninety (90) days of employment with the Debtor.  The Debtor provides medical coverage to eighteen (18) of its Employees and their dependents through a medical plan provided by Oxford Health Insurance, Inc.   The medical plan includes prescription drug coverage.  In addition, the Debtor provides dental coverage to thirteen (13) of its Employees and their dependents through a dental plan administered by Guardian Insurance.  The Health Plans are funded by contributions from the

Debtor in an amount equal to one-half of the cost for a single Employee, with the Employee paying for the remainder.

25.    The Debtor's Employees that participate in the Union obtain health insurance, dental insurance and other benefits pursuant to the Union Agreement, and the Debtor pays the premiums associated with this coverage through contributions to the Union welfare and benefits fund.  On a monthly basis, the Debtor is required to pay approximately $17,700 on account of contributions to the Union's welfare and benefit funds.

*Workers' Compensation Programs*

26.    The Debtor provides each Employee with workers' compensation insurance coverage in accordance with New York State law, protecting the Employees against medical expenses and partial loss of income as a result of job-related accident or sickness (the "Workers' Compensation Obligations").  The Debtor's workers' compensation program is administered by the New York State Insurance Fund (the "NYSIF").  The Debtor's annual insurance premium is $224,347.63, payable in monthly installments of $17,257.51, and its current program is scheduled to expire on January 1, 2016.

27.    The Debtor seeks authority to continue paying all amounts related to the Workers' Compensation Obligations that arose prior to the Petition Date, including, without limitation, any payment for workers' compensation claims, premiums and fees owed for administrative costs and other amounts required in connection with the Debtor's worker's compensation program, as such amounts become due in the ordinary course of the Debtor's business.

*Life Insurance and Disability Insurance*

28.    The Debtor provides full-time Employees with basic life insurance through Guardian and short-term and long-term disability insurance through Shelter Point Life Insurance

Company. On average, the Debtor pays approximately $1,600 per quarter for disability insurance and $95.00 per month for life insurance.  The Debtor seeks authority to maintain these insurance programs, including to make any payments necessary with respect thereto in the ordinary course of business

### Retirement Savings

29.     The Debtor offers a 401(k) retirement savings plan administered through Legg Mason.  Currently, three (3) of the Employees participate in the 401(k) retirement savings plan which is funded by Employee contributions only.   The Debtor estimates that it withholds approximately $430.00 each week from the Employees' paychecks for 401(k) retirement savings plan contributions.

### Business Expenses

30.     In the ordinary course of business, the Debtor pays certain business expenses incurred by the Employees in the performance of their duties including, among other things, fuel costs incurred in connection with oil deliveries, service calls and sales calls.  To streamline payment of fuel costs, the Debtor has an account with BP under which approximately thirty-four (34) credit cards are available for use by the Employees to pay for business-related fuel costs (the "Gas Cards").  Amounts due under the Gas Cards are invoiced directly to the Debtor on a monthly basis, and the Debtor pays all outstanding amounts to BP on a monthly basis.  The average monthly bill for the Gas Cards is approximately $14,000.  The Debtor seeks authority to continue making payments in connection with the Gas Cards to prevent the accrual of fees and interest charges and ensure that the Debtor's Employees to maintain the level of service that the Employees provided to the Debtor's customer prior to the Petition Date.

31.     The Debtor believes that it is an appropriate exercise of its business judgment to pay the business expenses that were incurred prepetition and to continue payment of these expenses post-petition to ensure that the Employees continue to perform their duties for the benefit of the Debtor's estate.  Accordingly, the Debtor seeks authority, but not direction, to pay all business expenses that accrued prepetition but have not yet been paid and to continue paying these expenses incurred post-petition in the ordinary course of business.

### *Other Payroll Deductions*

32.     The Debtor's Employees often request that the Debtor make payment deductions from their payroll for the benefit of other parties including, without limitation Union dues, supplemental health insurance benefits and/or charitable contributions.   Payment of these obligations is made from amounts otherwise payable to the Employees and is not an incremental cost obligation of the Debtor's estate.

33.     Given that these voluntary payroll deductions are made at no cost to the Debtor's estate, the Debtor requests authority, but not direction, to continue payment of the voluntary payroll deductions, whether arising pre- or post-petition.

### **BASIS FOR RELIEF REQUESTED**

**I.     The Debtor Should be Authorized to Pay all Employee Wage and Tax Obligations Under Sections 363(b) and 105(a) of the Bankruptcy Code**

34.     The Debtor requests authority to pay the prepetition Wages, Commissions, related Payroll Taxes and Withholding Obligations and amounts due under the Employee Benefit Programs in the ordinary course of business.  The Debtor requests further authority to continue paying and/or honoring Employee Wages, Payroll Taxes, Withholding Obligations and Employee Benefit Programs in the ordinary course of business as they become due and owing during the pendency of this chapter 11 case.  Any delay in paying its Employees could severely

disrupt the Debtor's business operations.  Moreover, failure to continue to provide the benefits of the Employee Benefit Programs may lead to a decline in morale among the Employees and a diminution in the Debtor's workforce.  At this critical stage, the Debtor cannot risk losing its workforce due to the uncertainty and decline in morale attributable to a chapter 11 filing. Accordingly, by this Motion, the Debtor seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the "necessity of payment" doctrine to pay outstanding prepetition obligations to its Employees.

35.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b).  To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a court must find that a "good business reason" exists for the use of such assets.  See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.), 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)).

36.     The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis in good faith and in the honest belief that the action taken was in the best interests of the company."  Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992).  Where a debtor articulates a reasonable basis for its business decisions, courts will generally not entertain objections to the debtor's conduct.  See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  The Debtor respectfully submits that payment of the prepetition obligations described in this Motion in order to preserve the Debtor's business, retain the Debtor's Employees and ultimately reorganize, even if such

payment were deemed to be outside the ordinary course of business, is a sufficient business justification for such authorization.  See Ionosphere Clubs, 98 B.R. at 175.

37.     The Court's authority to approve the payments requested in this Motion is further supported by section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

38.     The "necessity of payment" doctrine further supports the relief requested herein. This doctrine recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor. Ionosphere Clubs, 98 B.R. at 176; see also In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987); In re Just For Feet, Inc., 242 B.R. 821, 825-26 (D. Del. 1999) ("[n]ecessity of payment doctrine recognizes that paying certain prepetition claims may be necessary to realize the goal of chapter 11 – a successful reorganization"). This doctrine is consistent with the paramount goal of chapter 11 –"facilitating the continued operation and rehabilitation of the debtor . . . ." Ionosphere Clubs, 98 B.R. at 176.

39.     In order to achieve a successful reorganization, the Debtor requires its Employees to continue providing HVAC installation and maintenance, various cooling, heating, plumbing and appliance repair services in the same manner that they did prior to the Petition Date.  The requested authority to continue to pay the Employees' Wages, Commissions and maintain Employee Benefit Programs is necessary to ensure that the Debtors can retain their Employees at

a time when they are clearly needed.  The "necessity of payment" doctrine authorizes the relief requested in this Motion because the Employees are indispensable to the Debtor's operations and the successful resolution of this chapter 11 case.

## II.    The Debtor Should be Authorized to Make Payment of the Wages, Withholding Obligations and Payroll Taxes Which Constitute Priority Obligations Under Section 507 of the Bankruptcy Code

40.    In addition, the Debtor believes that the unpaid Wages and other benefits earned within the one hundred eighty (180) days prior to the Petition Date that the Debtor seeks to pay are entitled to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $12,475.  Courts have recognized future priority status as a valid basis for allowing the payment of wage claims.  See, e.g., In re Braniff, Inc., 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (explaining that prepetition wage and wage-related claims are often allowed to be paid postpetition where the claims are entitled to priority because "in all but the direst of circumstances, the debtor will ultimately pay the prepetition wages because of their very high priority [and, therefore, the] court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case").  Accordingly, the Debtor submits that granting the relief requested herein will not have an adverse effect on other unsecured creditors of the Debtor's estate.  The payment of these amounts is necessary here, and the Debtor has articulated a sound business justification for the payment of these obligations.

41.    Similarly, allowing the Debtor to remit the Withholding Obligations and Payroll Taxes to the appropriate authorities will not prejudice the Debtor's creditors because such amounts are being held in trust by the Debtor for the benefit of the Employees and thus do not constitute property of the Debtor's estate within the meaning of section 541 of the Bankruptcy Code.  See Begier v. Internal Revenue Svc., 496 U.S. 53, 65 (1990) (taxes such as excise taxes,

FICA taxes and withholding taxes are property held by debtor in trust for another and do not constitute property of the estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors).

42.     The Debtor's Employees are essential to the success of the Debtor's business.  As such, it is critical that the Debtor continues performing under the Employee Benefit Programs so that the Employees will receive the same benefits that were in place prior to the Petition Date.

43.     Furthermore, with respect to obligations described herein, including, but not limited to, the Wages, Commissions, Withholding Obligations, Payroll Taxes, and payment under the Employee Benefit Plans failure by the Debtor to fulfill such obligations could potentially result in claims being asserted directly against the Debtor's officers and directors. Not only would such claims against the Debtor's officers and directors distract such individuals at a time when it is critical to their full attention be focused on the reorganization efforts of the Debtor, but such officers and directors would be entitled to indemnification from the estate.

### III.     The Debtor Should be Authorized to Direct all Banks to Honor Prepetition Checks and Other Transfers for Payments Made Under this Motion

44.     The Debtor also requests that the Court authorize and direct the banks with which the Debtor maintains accounts relating to its Employee obligations to receive, process, honor, accept and pay any and all checks or electronic transfers drawn on the Debtor's accounts related to ordinary course obligations, including the Wages, Commissions, Payroll Taxes, Withholding Obligations, and amounts payable under the Employee Benefit Programs, as outlined above, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

45.     Finally, the Debtor requests that the Court authorize the Debtor to issue new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently.  The Debtor submits that this relief is integral in order to implement the relief sought by this Motion.  Moreover, if checks issued and fund transfers requested on account of payment of these amounts are dishonored, or if such accrued obligations are not timely paid postpetition, the Debtor's Employees may suffer extreme personal hardship.

### IV.    Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm

46.     The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons and as set forth in the Schmider Affidavit, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

47.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise."  As set forth above, the payments proposed herein are essential to prevent irreparable damage to the Debtor's operations and value.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### NOTICE

48.     Notice of this Motion has been given to (a) the United States Trustee for the Eastern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) Bank of America or its counsel, if known; and (d) Local 638 of the Metal Workers Trade Branch or its

counsel, if known. The Debtor submits that, under the circumstances, no other or further notice is required.

49. No previous application for the relief sought herein has been made to this or any other Court.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

WHEREFORE, the Debtor respectfully requests entry of the annexed Order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
   March 10, 2015

         CULLEN AND DYKMAN LLP


BY:    /s/ C. Nathan Dee
    C. Nathan Dee, Esq.
    Elizabeth M. Aboulafia, Esq.
    100 Quentin Roosevelt Boulevard
    Garden City, New York 11530
    (516) 357-3700

    *Proposed Attorneys for Cool Power LLC*

**EXHIBIT "A"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
COOL POWER LLC,                                        :    Case No. 15-
                                                       :
                            Debtor.                    :
                                                       :
-----------------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY
CERTAIN PREPETITION EMPLOYEE OBLIGATIONS,
WITHHOLDING OBLIGATIONS AND EMPLOYEE BENEFITS (II)
AUTHORIZING THE DEBTOR TO CONTINUE PAYMENT OF
EMPLOYEE OBLIGATIONS, WITHHOLDING OBLIGATIONS AND
EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS,
AND (III) DIRECTING BANKS TO HONOR RELATED PREPETITION
TRANSFERS, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] filed by Cool Power LLC, the above-captioned debtor

and debtor-in-possession (the "Debtor") pursuant to sections 105, 363 and 507 of chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an interim order (i)

authorizing the Debtor to pay certain prepetition employee obligations, prepetition withholding

obligations and prepetition employee benefits, (ii) authorizing the Debtor to continue payment of

employee obligations, withholding obligations and employee benefits in the ordinary course of

business, (iii) directing banks to honor prepetition transfers related to the foregoing, and (iv)

granting related relief; the Court, having reviewed the Motion and having heard the statements of

counsel in support of the relief requested in the Motion at the hearing before the Court (the

"Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and 1334; this is a core matter pursuant to 28 U.S.C. § 157(b)(2); notice of the Motion and the

Hearing were sufficient under the circumstances and that no further notice need be given; the

relief requested by the Motion is in the best interests of the Debtor, its estate, its creditors and

other parties-in-interest, and is essential to the continued operation of the Debtor's business and

the preservation of the value of its assets; and the legal and factual bases set forth in the Motion

and at the Hearing establish just cause for the interim relief granted herein and that such relief is

necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      The Debtor shall be and hereby is authorized to pay, in its discretion, the

prepetition obligations relating to its Employees including, but not limited to, the Wages, to the

extent such Wages do not exceed $12,475 per Employee, and to remit all Withholding

Obligations and Payroll Taxes to the appropriate third parties as and when such obligations come

due.

3.      The Debtor shall be and hereby is authorized to pay or honor prepetition amounts

that come due relating to the Employee Benefit Programs in the ordinary course of business.

4.      The Debtor shall be and hereby is authorized to pay Commissions to the

Commission Employees as such Commissions because due and owing in the ordinary course of

the Debtor's business.

5.      The Debtor shall be and hereby is authorized to continue to pay Employee Wages,

remit Withholding Obligations and Payroll Taxes to the appropriate third parties and pay and/or

honor amounts relating to the Employee Benefit Programs in the ordinary course of business in

the same manner that such practices, programs and policies were in effect as of the Petition Date.

6.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its Employees, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

7.      The Debtor shall be and hereby is authorized to issue, in its discretion, new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8.      Notwithstanding Bankruptcy Rules 6003, 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

10.      A hearing shall be held to consider the relief granted herein on a final basis on _____, 2015 at __:00 a.m./p.m. before the Honorable _____, United States Bankruptcy Judge, in Courtroom ___ of the United States Bankruptcy Court for the Eastern District of New York, 560 Federal Plaza, Central Islip, New York (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis.

3

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                            :

In re:                                          :   Chapter 11
                                              :

COOL POWER LLC,                    :   Case No. 15-
                                              :

                      Debtor.           :
                                            :
-----------------------------------------------------------------x

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO PAY
CERTAIN PREPETITION EMPLOYEE OBLIGATIONS,
WITHHOLDING OBLIGATIONS AND EMPLOYEE BENEFITS (II)
AUTHORIZING THE DEBTOR TO CONTINUE PAYMENT OF
EMPLOYEE OBLIGATIONS, WITHHOLDING OBLIGATIONS AND
EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS,
AND (III) DIRECTING BANKS TO HONOR RELATED PREPETITION
<u>TRANSFERS, AND (IV) GRANTING RELATED RELIEF</u>**

Upon the motion (the "Motion")[1] filed by Cool Power LLC, the above-captioned debtor

and debtor-in-possession (the "Debtor") pursuant to sections 105, 363 and 507 of chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of a final order (i)

authorizing the Debtor to pay certain prepetition employee obligations, prepetition withholding

obligations and prepetition employee benefits, (ii) authorizing the Debtor to continue payment of

employee obligations, withholding obligations and employee benefits in the ordinary course of

business, (iii) directing banks to honor prepetition transfers related to the foregoing, and (iv)

granting related relief; and the Court having entered the *Interim Order (I) Authorizing the Debtor*

*to Pay Certain Prepetition Employee Obligations, Withholding Obligations and Employee*

*Benefits, (II) Authorizing the Debtor to Continue Payment of Employee Obligations, Withholding*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

*Obligations and Employee Benefits in the Ordinary Course of Business, (III) Directing Banks to Honor Related Prepetition Transfers, and (IV) Granting Related Relief* [Docket No. __] (the "Interim Order"); and due and sufficient notice of the Motion and the Interim Order having been given; and it appearing that no other or further notice need be provided; and upon the record of the hearing before the Court on _____, 2015 (the "Hearing"); and having found that that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2); and it appearing that the relief requested by the Motion is in the  best interests of the Debtor, its estate, its creditors and other parties-in-interest; and it appearing that the relief requested in the Motion is essential to the continued operation of the Debtor's business and the preservation of the value of its assets; and it appearing that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate, and after due deliberation and sufficient cause appearing therefor,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      The Debtor shall be and hereby is authorized to pay, in its discretion, the prepetition obligations relating to its Employees including, but not limited to, the Wages, to the extent such Wages do not exceed $12,475 per Employee, and to remit all Withholding Obligations and Payroll Taxes to the appropriate third parties as and when such obligations come due.

3.      The Debtor shall be and hereby is authorized to pay Commissions to the Commission Employees as such Commissions because due and owing in the ordinary course of the Debtor's business.

4.      The Debtor shall be and hereby is authorized to pay or honor prepetition amounts that come due relating to the Employee Benefit Programs in the ordinary course of business.

5.      The Debtor shall be and hereby is authorized to continue to pay Employee Wages, remit Withholding Obligations and Payroll Taxes to the appropriate third parties and pay and/or honor amounts relating to the Employee Benefit Programs in the ordinary course of business in the same manner that such practices, programs and policies were in effect as of the Petition Date.

6.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its Employees, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

7.      The Debtor shall be and hereby is authorized to issue, in its discretion, new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8.      Notwithstanding Bankruptcy Rules 6003, 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.